[No. 17320.   Department Two.   December 27, 1922.]

C. B. TOADVINE *et al., Respondents,* v. NORTHWEST TRUST & STATE BANK *et al., Appellants.*[1]

ASSOCIATIONS (1)—CONSTITUTION AND BY-LAWS—POWER OF OFFICERS—INDORSEMENT OF CHECKS. The constitution of an association, providing that it shall be the duty of the treasurer to receive all moneys from the financial secretary, does not authorize the latter to indorse checks or other negotiable instruments, payable to the association or its treasurer, although it specially authorizes him to collect all money and pay the same to the treasurer.

SAME. Notwithstanding proof limiting the actual authority of a financial secretary of an association to the collection of money, whether he was held out as having the authority of the treasurer to indorse checks, is a question for the jury, where it appears that he continuously and almost without exception performed the duties of the treasurer in that respect during the terms of two treasurers.

Appeal from an order of the superior court for King county, Brinker, J., entered January 17, 1922, granting a new trial after the verdict of a jury rendered in favor of the defendants, in an action for money had and received. Affirmed.

[1]Reported in 211 Pac. 286.

*McClure & McClure*, for appellants.

*Mark M. Litchman* and *Kazis Krauczunas* (*Fred C. Campbell*, of counsel), for respondents.

TOLMAN, J.—Respondents, for and on behalf of a voluntary association known as Cleaners & Dyers Local No. 183, brought this action to recover from appellants the principal sum of $4,550, evidenced by certain checks which it is alleged belonged to Local No. 183, the proceeds of which, it is charged, were collected and appropriated by the appellants.

Among other things, their complaint alleges that, between January 13, 1920, and May 10, 1920, the plaintiffs A. V. Allett and W. H. Staats (the latter succeeding the former) were the duly elected and acting treasurers of the Local, and were the only persons during the time each held office authorized to endorse checks made payable to them respectively, as treasurer, and that it was the duty of the treasurer of the Local to deposit all such checks with the appellant Seattle Labor Temple Association, to the credit of the Local. Specific allegations are made as to the issuance of thirteen separate checks by the international organization called the Journeymen Tailors' Union of America, payable to the order of A. V. Allett, Treasurer, or W. H. Staats as treasurer, aggregating the amount sued for; that one H. Flitton, without any authority from the Local, or from the then treasurer, wrongfully endorsed these checks by writing on the back thereof the name of the treasurer to whom the check was made payable, by himself as financial secretary, whereupon he procured the endorsement of appellant A. M. Lotz, who was the officer manager of the Seattle Labor Temple Association, upon the checks so endorsed by him, and presented the same to the appellant bank, which

paid to him the money. That Flitton did not then, or at any time, pay the money over to the Local or its authorized officers, and that the appellant bank thereafter collected the checks from the bank in Chicago upon which they were drawn, and has withheld the money from respondents, and converted it to its own use.

Appellants' answer presented two affirmative defenses; first, that Flitton occupied the position of financial secretary of Local No. 183, and that it was his duty to collect and receive, from time to time, all such money as might be payable to, or receivable by said Local from any source; that, at the time these checks were received by Flitton, a large number of the members of the Local were out on strike, and the checks were sent to the Local by the Journeymen Tailors' Union of America for the purpose of paying strike benefits; that Flitton, as financial secretary, acted as the financial representative of the Local for the purpose of paying the strike benefits, and that the Local held out and represented to the public generally, and particularly to appellants, that Flitton was its sole representative and financial agent in the collection, distribution and payment of strike benefits; and it is further alleged, on information and belief, that any sums of money received by Flitton, by reason of his endorsement and collection of the checks, were by him distributed and paid out to the members of the Local in payment of strike benefits. The second affirmative defense is to the effect that Flitton was held out by the Local to the public generally, and to appellants particularly, as having full power and authority to endorse all checks, drafts and other instruments in writing providing for the payment of money to the Local, in the name of the treasurer of the Local, for

the purpose of cashing and collecting the same, and that they relied upon Flitton's apparent authority in that respect.

The case was tried to a jury which, under the instructions given by the trial court, returned a verdict in favor of defendants, appellants here, and thereafter respondents moved for judgment notwithstanding the verdict, and for a new trial. The motion for judgment n.o.v. was denied. The motion for a new trial was granted, and from that order the defendants have appealed.

Appellants assign as error the refusal of the court to sustain their challenge to the sufficiency of the evidence to support any verdict in favor of respondents, the refusal to instruct the jury to return a verdict in favor of appellants, and the granting of respondents' motion for a new trial; maintaining that the evidence was such that appellants were entitled to judgment, as a matter of law, that there was no error committed in the course of the trial below which prejudiced the respondents, and therefore the granting of a new trial was erroneous.

To support their contention, they urge that, under the evidence, the only officer authorized to collect money due the Local was its financial secretary, Flitton; that, when he collected money, his possession was the possession of the local, and when the bank paid the money to him, it paid it to the Local. The constitution and by-laws of the Local were put in evidence, and the duties of the financial secretary and the treasurer are therein set forth as follows:

"Sec. 10—The Financial Secretary shall keep a correct account between the Union and its members, collect all moneys and pay the same to the Treasurer, taking his receipt for the same, and he shall at the end of his term of office make a complete report of the

standing of all members of the Union in general; also the amount of moneys received and from what sources, during his term of office.''

''Sec. 12—It shall be the duty of the Treasurer to receive all moneys from the Financial Secretary, giving his receipt for the same. He shall pay all bills when properly authorized to do so. He shall hold in his possession the sum of $50.00 to carry on the affairs of the Union, and all sums over and above that amount, he shall deposit in one of the city banks in Seattle designated by the Union to the credit of the Union. He shall keep an account book with said bank, and he must have the signatures of the President and Secretary on all orders before he can have the same cashed, and under no consideration shall the bank be allowed to cash orders without said signatures, and the books shall be open for inspection at any time the Union may deem it necessary.''

Instead of the moneys of the Local being deposited in a bank, as specified in the section of the by-laws last quoted, such moneys were deposited with the appellant Seattle Labor Temple Association, under a certain provision of its by-laws authorizing it to receive and care for moneys of the Unions, to keep the same in a fund to be known as the ''Treasury Fund,'' and to pay out such moneys on demand on properly signed warrants of the depositing Unions. Article 10, § 6, of the by-laws of the Labor Temple Association is as follows:

''Sec. 6.—Treasury Fund.—Into this fund shall be paid all moneys received from Unions under the provisions of Article IV, section 5, subdivision 6 of these by-laws. Disbursements from this fund shall be made by check only, upon properly signed warrants of unions having money to their credit in such fund, or by order of the Board of Trustees. All checks on this fund shall be signed by the Secretary-Manager.''

The first question is: Does the constitution of the Local providing that the financial secretary shall col-

lect all moneys and pay the same to the treasurer, and "it shall be the duty of the treasurer to receive all moneys from the Financial Secretary" authorize the Financial Secretary to endorse checks and other negotiable instruments payable to the Local or to its Treasurer?

All authorities agree that the power to bind the principal by making, accepting or endorsing negotiable paper is an important one, not lightly to be inferred; and, as we read the constitution of the Local hereinbefore quoted, it does not in terms or by necessary implication authorize the financial secretary to endorse such paper. True, it specifically authorizes him to collect all moneys and pay the same to the treasurer, and makes it the duty of the treasurer to receive all moneys from the financial secretary and receipt for the same; but even so, it is quite generally held that one authorized to collect moneys may not endorse a check which he thus obtains, payable to his principal, though if he does so, and actually pays the money to his principal, or properly disburses it for his benefit, the principal cannot compel payment of the check a second time. 2 Morse on Banks and Banking (5th ed.), § 440 B. The subject has been considered and quite fully discussed by this court in *Coleman v. Seattle Nat. Bank*, 109 Wash. 80, 186 Pac. 275, 12 A. L. R. 108, and the authorities are there reviewed. That case is conclusive upon the point which we have been considering; and following its rule, we are constrained to hold that the constitution and by-laws of the Local confer no power upon the financial secretary to endorse or collect negotiable paper. See, also, *Standard Steam Specialty Co. v. Corn Exchange Bank*, 220 N. Y. 478, 116 N. E. 386, L. R. A. 1918B 575; *McFadden v. Follrath*, 114 Minn. 85, 130 N. W. 542, 37 L. R. A. (N. S.) 201; 3 R. C. L. 542.

Certain instructions to the jury, conflicting with the views just set forth, were given, and the trial court was right in concluding that the giving of these instructions was error justifying the granting of a new trial.

Respondents have taken a cross-appeal from the order denying their motion for judgment notwithstanding the verdict, asserting that there was no evidence that the money paid by the bank to Flitton was by him properly disbursed in the payment of strike benefits, and that there was no holding out to the public or to appellants of authority in Flitton to endorse checks drawn as these were, because his actual authority was proven, and it was shown that the funds of the Local on deposit with appellant Seattle Labor Temple Association could be withdrawn only on vouchers signed by other officers of the Local. Notwithstanding the proof of actual authority, it was shown that, during the time respondents Allett and Staats were the respective treasurers of the Local, continuously and almost without exception Flitton performed the duties of treasurer of the Local in its transactions with the Temple Association; and, after a careful examination of the record, we are convinced that there was ample evidence to take to the jury the question of whether or not he was held out as having authority to endorse and cash the checks in question.

The judgment of the trial court is therefore affirmed.

Parker, C. J., Main, and Fullerton, JJ., concur.