# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| ARENDT SPESER, a married man, | ) | No. 75724-5-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| KELSEY MONDAU and JOHN DOE | ) | UNPUBLISHED |
| MONDAU, wife and husband, and the | ) | |
| marital community composed thereof, | ) | FILED: September 11, 2017 |
| | ) | |
| Respondents. | ) | |
| | ) | |

Cox, J. — Arendt Speser appeals the trial court's grant of summary judgment to Kelsey Mondau in this personal injury action. The action arises from an intersection accident on 15th Avenue West in Seattle. Speser was riding south on his motorcycle. Mondau was travelling north when she decided to make a left-hand turn in her motor vehicle. The two vehicles did not collide. But Speser was injured while braking once he saw Mondau.

We hold that there are no genuine issues of material fact whether Mondau breached any duty to Speser. She is entitled to judgment as a matter of law. We affirm.

15th Avenue West is a thoroughfare with three southbound lanes. As Speser approached the intersection with West Armory Way, he switched into the southbound curb lane. This is a right turn only lane, except for buses.

Mondau reached the same intersection in her vehicle, traveling northbound on the other side of the thoroughfare. She intended to make a left-hand turn. Traffic occupied the two southbound through lanes, but a gap remained for left-turning drivers. Mondau, seeing this gap, entered the intersection to turn left.

As she was turning, she saw Speser riding his motorcycle still in the curb lane. She stopped her vehicle short of the curb lane, in front of the two southbound through lanes. Seeing Mondau's vehicle, Speser braked suddenly and fell to the ground. There was no collision. Nevertheless, he sustained injuries.

Speser commenced this personal injury action, asserting negligence and seeking damages. Mondau moved for summary judgment, arguing that she had not breached any duty to him. In response, Speser claimed she breached duties under two statutes: RCW 46.61.185 and RCW 46.61.190(2). The trial court granted the motion.

Speser appeals.

## RCW 46.61.185

Speser argues that Mondau breached, as a matter of law, her statutory duty to yield the right-of-way under RCW 46.61.185. Alternatively, he argues that there are genuine issues of material fact whether she did so. We hold that she did not breach a duty to him and there are no genuine issues of material fact under this rule of the road.

Summary judgment is proper "only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."[1] "A genuine issue of material fact exists if 'reasonable minds could differ on the facts controlling the outcome of the litigation.'"[2]

We review de novo a trial court's grant of summary judgment.[3]

To prove negligence, a claimant must prove the defendant had a duty towards the claimant, breached that duty, and that that breach was the proximate cause of the claimant's injury.[4]

RCW 46.61.185 is a statutory rule of the road that provides that:

> The driver of a vehicle intending to turn to the left within an intersection or into an alley, private road, or driveway shall yield the right-of-way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard.

Here, the question is whether Mondau breached a duty owed to Speser under this statue. She was the disfavored driver with the duty to "yield the right-of-way" to any vehicles approaching from the north that were either within the

---

[1] Scrivener v. Clark Coll., 181 Wn.2d 439, 444, 334 P.3d 541 (2014); see also CR 56(c).

[2] Knight v. Dep't of Labor & Indus., 181 Wn. App. 788, 795, 321 P.3d 1275 (quoting Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008)), review denied, 181 Wn.2d 1023 (2014).

[3] Id.

[4] Hertog, ex rel. S.A.H. v. City of Seattle, 138 Wn.2d 265, 275, 979 P.2d 400 (1999).

intersection or close enough to constitute an immediate hazard.[5] As the disfavored driver, she had "the primary duty to avoid collision."[6]

The narrow question is what the legislature intended by the phrase "yield the right-of-way" under these circumstances.

In construing a statute, we seek to ascertain and carry out the legislature's intent.[7] We do so based on the plain meaning of the statutory language.[8] An undefined term in that language is given its "usual, ordinary, and commonly accepted meaning."[9] Where a term does not have technical meaning, this court may refer to its dictionary definition.[10]

The American Heritage Dictionary defines "yield" as "to give up (an advantage, for example) to another; concede."[11] And it defines the "right-of-way" as the "customary or legal right of a person, vessel, or vehicle to pass in front of another."[12] Applying these definitions here, to "yield the right-of-way" is to give up to another vehicle the right to pass in front of that vehicle. Thus, a disfavored

---

[5] See Doherty v. Mun. of Metro. Seattle, 83 Wn. App. 464, 470, 921 P.2d 1098 (1996).

[6] Id.

[7] Thorpe v. Inslee, 188 Wn.2d 282, 289, 393 P.3d 1231, 1234 (2017).

[8] Id.

[9] Greenhalgh v. Dep't of Corr., 180 Wn. App. 876, 884, 324 P.3d 771 (2014).

[10] Id.

[11] THE AMERICAN HERITAGE DICTIONARY 2070 (3d ed. 1992).

[12] Id. at 1554.

driver breaches the duty to yield the right-of-way when he or she fails to give up to another vehicle the right to pass in front of that vehicle.

Here, Mondau began her left-hand turn in the intersection, but stopped short of the curbside lane where Speser rode his motorcycle. Specifically, it is undisputed that she stopped her vehicle in front of the two southbound through lanes to the east of the curbside lane where Speser's motorcycle was located. She did not breach any duty under RCW 46.61.185 because she yielded to Speser's right of way in the curb lane.

Speser argues that nothing in RCW 46.61.185 states that breaching the duty to yield is triggered only when a disfavored driver intrudes into the favored driver's lane of travel.[13] Specifically, he argues that "the disfavored driver need only have made a left turn when a favored driver is 'close enough to constitute an immediate hazard.'"[14] This argument misreads the statute.

As we just discussed, the plain meaning of the statutory language shows the legislative intent that RCW 46.61.185 requires that the disfavored driver yield the right-of-way to the favored driver coming from the opposite direction. Speser fails to explain how the clause in the statute on which he relies—"so close thereto as to constitute an immediate hazard" —dictates that "right of way" is something other than what we decide. Accordingly, we adhere to this construction of the statute.

The cases Speser cites do not require a different result.

---

[13] Brief of Appellant at 12.

[14] Id. (quoting RCW 46.61.185).

5

Speser relies on Pollard v. Rossoe Manufacturing Co.[15] But this case does not help him.

There, Hannah Pollard, the disfavored driver, had "entered a north-south arterial from the west, intending to cross the southbound traffic lanes, make a left turn[,] and go north on the arterial."[16] For purposes of appeal, the supreme court assumed that she had crossed the southbound traffic lanes and was in the northbound lanes.[17] Pollard hit a southbound oil truck in the intersection that was not entirely on its own side of the center lane.[18]

Pollard, the disfavored driver, commenced an action for recovery.[19] The supreme court considered whether her contributory negligence barred that recovery.

Under former RCW 46.60.170, a different statute than the one now before us, Pollard, as the disfavored driver, had to "stop, to look out for approaching traffic on the arterial, and to yield the 'right-of-way to any vehicles . . . approaching a given point within the intersection, whether or not h[er] vehicle first reaches and enters the intersection.'"[20] The court explained that "[t]he fact that two cars collide within the intersection establishes that prior thereto they were

---

[15] 56 Wn.2d 862, 355 P.2d 979 (1960).

[16] Id. at 863.

[17] Id.

[18] Id.

[19] Id.

[20] Id. (quoting RCW 46.60.170 (1955)).

simultaneously approaching a given point within the intersection, and that the disfavored driver had not yielded the right of-way."[21]

Pollard argued that "if the disfavored driver has made it safely across half of the arterial, he is no longer negligent, as a matter of law, if involved in a collision with vehicles which should have been traveling on the half of the arterial he has cleared."[22]

The supreme court rejected this argument.[23] It reasoned that:

> it was to avoid just such split second timings, as would be involved in clearing half of an arterial, and the burden of choice which would be put on favored drivers by disfavored drivers trying to cross in front of them, that led the legislature to require disfavored drivers to look out for and give right of way to any vehicles upon the arterial highway simultaneously approaching a given point within the intersection.[24]

This case is distinguishable. In Pollard, the disfavored driver passed through the favored driver's rightful lanes of travel without looking out. She did not yield the right-of-way to the truck as it "simultaneously approach[ed] a given point within the intersection."[25] These principles made her conduct negligent even if the collision occurred outside the truck's rightful lane of travel.

By contrast, Mondau never entered Speser's right of way, the curb lane of travel. To the extent the vehicles were simultaneously approaching a given

---

[21] Id.

[22] Id. at 864.

[23] Id.

[24] Id.

[25] Id. at 863.

7

point, namely Speser's location, Mondau braked before reaching that point. In doing so, she yielded the right of way to him.

Nor does <u>Doherty v. Municipality of Metropolitan Seattle</u>[26] support Speser's position.

In that case, Reiko Doherty was driving northbound on Southcenter Parkway when she suffered hypoglycemic shock and lost control of her car.[27] She started veering and struck several vehicles.[28] A bus driver had begun turning left into an adjacent mall parking lot and had "paused, partially blocking the northbound lanes, while waiting for traffic to clear."[29] At that point, Doherty crashed into the bus and was killed.[30]

Her spouse and estate brought a claim for negligence against Seattle.[31] The trial court granted summary judgment for Seattle based on the city's argument that proximate cause could not be established as the accident would have still occurred if the bus had remained in the left turn pocket.[32]

---

[26] 83 Wn. App. 464, 921 P.2d 1098 (1996).

[27] <u>Id.</u> at 466.

[28] <u>Id.</u>

[29] <u>Id.</u>

[30] <u>Id.</u> at 467.

[31] <u>Id.</u>

[32] <u>Id.</u>

This court reversed based on RCW 46.61.185.[33] It reasoned that under this statute, Doherty had been the favored driver.[34] The bus driver had failed to yield the right-of-way to Doherty and had blocked a lane of oncoming traffic.[35] The car "was within its rightful lanes of travel and was close enough to constitute an immediate hazard."[36]

This court concluded that the accident and consequences may not have resulted in the exact same fashion if the bus driver was not blocking part of the northbound roadway.[37] For that reason, a genuine issue of material fact remained and summary judgment had been improper.[38]

But here, Mondau never entered Speser's rightful lane of travel. She braked in front of the two easterly through lanes before reaching that lane. Thus, Mondau fulfilled her duty to Speser.

Alternatively, Speser argues that whether he was close enough to constitute an immediate hazard is a genuine issue of material fact for trial.[39] We disagree.

---

[33] Id. at 470.

[34] Id. at 471.

[35] Id.

[36] Id. at 470.

[37] Id. at 471.

[38] Id.

[39] Brief of Appellant at 17-18.

A genuine issue of material fact is one on which the outcome of litigation depends.[40] The undisputed evidence in the record is that Mondau yielded the right of way to Speser by not intruding into his right of way, the curb lane of travel.

The fact that she may have been several feet from Speser's lane of travel when she braked does not diminish the fact that she yielded the right of way to him, fulfilling her duty. Whether Speser was then either "within the intersection" or "so close thereto as to constitute an immediate hazard" does nothing to affect the fact that she yielded the right of way to him. While his exact location in relation to the intersection may be an issue of fact, it is not material to the outcome of this litigation.

Speser next argues that this court "should not create a bright line rule that no breach occurs unless a disfavored driver actually enters into the favored driver's lane."[41] We do not make a bright line rule by our holding in this case.

For example, in a future case, a favored driver may be in an oversize vehicle that requires use of more than one lane. Under those circumstances, the favored driver's right of way may be more than one lane. But the analysis there would be no different than that here. The question still would be whether the disfavored driver yielded the right of way to the favored driver.

---

[40] Seattle Police Officers Guild v. City of Seattle, 151 Wn.2d 823, 830, 92 P.3d 243 (2004).

[41] Brief of Appellant at 18.

In sum, Mondau did not breach any duty under RCW 46.61.185. And there are no genuine issues of material fact based on this statute.

## CLEAR STRETCH OF THE ROAD

Speser next argues that genuine issues of material fact exist whether Mondau breached a common law duty of reasonable care based on the "clear stretch of the road" doctrine.[42] We disagree.

A threshold issue that neither party addresses is that Speser makes this common law duty doctrine argument for the first time on appeal. His alternative argument below was based on statutory grounds, specifically RCW 46.61.190(2), not common law grounds.[43] Generally, we do not address arguments made for the first time on appeal.[44]

Nevertheless, we reach the issue. It appears that the "clear stretch of the road" doctrine has been codified in 46.61.190.[45] Thus, the basic argument was preserved for appeal.

The "clear stretch of the road" doctrine:

> is based on the requirement that a disfavored driver proceed to make a left turn in front of oncoming traffic only when he has observed all that is to be seen from a prudent point of observation, no oncoming traffic is to be seen which will threaten his passage by a fair margin of safety, and no change in the obstruction of his view can be anticipated. If an approaching favored vehicle is beyond the visibility of a disfavored driver when he commences and is committed to his lefthand turn, then the disfavored driver has

---

[42] Id. at 19.

[43] Cf. Fovargue v. Ramseyer, 73 Wn.2d 574, 581, 439 P.2d 966 (1968).

[44] RAP 2.5(a).

[45] Fovargue, 73 Wn.2d at 581-82.

discharged his duty of due care by doing everything that reasonably could be expected to be done to avoid a collision.[46]

However, where some kind of obstruction blocks the view of the disfavored driver, a different rule applies. Where the obstruction:

> is one that reasonably can be expected to move, such as another occupied vehicle or road repair machinery, then the disfavored driver must permit the impairment to his view to move on so he can see the stretch of the road from which a favored driver might be approaching.[47]

Here, the record is undisputed that there was no obstruction blocking Mondau's view when she began turning.[48] Consequently, on this record, there is no issue of any obstruction creating a duty for Mondau to wait under the clear stretch of road doctrine.

Accordingly, there are no genuine issues of material fact regarding Mondau's duty under the clear stretch of road doctrine. She is entitled to judgment as a matter of law on this ground, as well.

We affirm, in all respects, the summary judgment order of dismissal.

_____
Cox, J.

WE CONCUR:

_____          _____
                                  Leach, J.

---

[46] Harris v. Burnett, 12 Wn. App. 833, 842, 532 P.2d 1165 (1975).

[47] Id.

[48] Clerk's Papers at 72 [lines 7-9 testimony is unrefuted].

2017 SEP 11 AM 9:03
COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED